**Milton J. WILLARD, Plaintiff,**

v.

**UNITED STATES of America, the Federal Bureau of Investigation, Defendants.**

**No. GC 6819.**

United States District Court
N. D. Mississippi,
Greenville Division.

May 28, 1969.

Milton J. Willard, pro se.

William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

On May 17, 1968, the plaintiff, Milton J. Willard, filed a complaint in the aforesaid cause of action which complaint alleges in essence that when he was arrested and placed in the city jail of Greenville, Mississippi, on November 10, 1966, and retained there through November 17, 1966, he was denied access to medicine and denied access to a doctor which he needed for his physical health. He was arrested on suspicion of bank robbery and was subsequently tried and found guilty, in the case of United States of America v. Willard, Criminal

Action No. 4031, United States District Court, Southern District of Mississippi. A transcript of the proceeding in this case has been made a part of the record in the case sub judice.

This record reflects that on June 9, 1967, the Court considered a motion for a new trial. The substance of the motion for a new trial concerned whether certain admissions which Willard had made while in custody in the Greenville jail between November 10, 1966, and November 17, 1966, should have been excluded at the trial. One factor which Willard alleged to prove that the admissions should have been excluded was the fact that he was denied medicine and denied access to a doctor on November 10, 1966, through the investigatory procedures up to November 15, 1966. A full and complete hearing was made of the motion for a new trial; Willard was allowed to call witnesses in his behalf; he was represented by counsel; and a transcript was made of the hearing.

Willard stated that he did not have any pain in his stomach during the four or five days before he saw a doctor because he did not eat any food during these four or five days. (Record of hearing June 9, 1967, P. 58 and 59)

Doctor George W. Eubanks testified that he saw Willard on November 11, 1966, at around 11:00 a. m. and on November 15, 1966, at around 11:00 a. m. He diagnosed Willard's condition as nervous indigestion. (Record P. 66) He further testified that Willard did not seem any more nervous than other patients in the jail. (Record P. 67)

Gatewood Hamm, Jail Superintendent of the city jail of Greenville, testified that Willard was provided special food for breakfast while incarcerated in the Greenville jail. (Record P. 71)

John Puddister, Special Agent of the Federal Bureau of Investigation, testified that when he interviewed Willard on the night of November 10, 1966, Willard did not ask to secure any medication. (Record P. 105) He further testified that Willard did not ask to secure any medication at any of the interviews subsequent to November 10, 1966. (Record P. 106)

After hearing all of the testimony, Judge Harold Cox, Trial Judge, made the following statement:

"I don't think that Mr. Willard was mistreated by anybody, anywhere at any time, as a matter of fact I don't even think that he is sick. I think that anybody that didn't have a nervous stomach like his doctor said he had would be quite an unusual individual with the experience that he had just gone through and I believe his doctor diagnosed him as having nervous indigestion. Well, he would have to 'have some kind of constitution to just have nervous indigestion and no more after the experience that he had just gone through." (Record P. 112)

In the present civil action Willard makes the following statements as to the damages which he has suffered:

"Plaintiff can only state that by refusing plaintiff medical care did place plaintiff's life in jeopardy. By placing plaintiff's health and mental condition in the most severe jeopardy and that plaintiff did suffer a great deal both then and later".

And further in the prayer for relief, he prays for damages of One Million Dollars, and further protection and safeguards for his impaired health and the violation of his constitutional rights.

A number of motions have been made in this action. On June 17, 1968, Willard made a motion for appointment of counsel and the motion was denied by the Court on June 18, 1968. On August 21, 1968, the government filed a motion to dismiss alleging as grounds that the issue in the complaint had been litigated in full in The United States of America v. Milton J. Willard, Criminal Action No. 4031, United States District Court, Southern District of Mississippi, and that the civil action was an attempt to re-litigate the same issue. On August 26, 1968, Willard filed a motion to subpoena witnesses and a motion to subpoe-

na to produce documents and papers. On August 29, 1968, he filed an answer to the motion to dismiss of the government. On September 9, 1968, the government filed exhibits to the motion to dismiss. On September 13, 1968, Willard filed a motion to overrule the government's motion to dismiss and a motion for trial by jury. On April 14, 1969, Willard filed a motion for a writ of habeas corpus ad testificandum and a motion for assistance of counsel.

All outstanding motions were scheduled for Motions Day Wednesday, April 30, 1969, in the United States District Court, Oxford, Mississippi. Prior to the hearing, the government filed a memorandum brief in support of the motion to dismiss. At the hearing the Court questioned the government as to the validity and substance of the motion to dismiss and all other outstanding motions.

█ The Court is cognizant of the well established rule that in in forma pauperis proceedings of a civil nature, the granting or refusing of such procedure is within the sound discretion of the District Court. Weller v. Dickson, 314 F.2d 598, 9 Cir. 1963; Smart v. Heinze, 347 F.2d 114, 9 Cir. 1965; Irwin v. Burson, 389 F.2d 63, 5 Cir. 1967. In the case sub judice the Court initially granted the plaintiff the right to proceed in forma pauperis on the filing of the complaint. Yet as the case developed and more information was placed in the record, it became increasingly apparent to the Court that the gravamen of the complaint is frivolous.

█ As set forth in Williams v. Field, 394 F.2d 329, 9 Cir. 1968, the statute (28 U.S.C. § 1915(d)) does not prescribe the manner in which the District Judge shall become "satisfied" that an action is frivolous or malicious. The ultimate determination is in the sound discretion of the District Judge, and each case must be scrutinized on its particular facts and circumstances.

After thoroughly reviewing the record of the United States of America v. Milton J. Willard, Criminal Action No. 4031, United States District Court, Southern District of Mississippi, this Court is satisfied that the plaintiff, who was then a defendant, had ample opportunity, and did, bring out all of the substantive facts surrounding the alleged denial of the medicine and the denial of the right to see a doctor on November 10, 1966 through November 15, 1966. It goes without saying that in the criminal case, the trial judge was concerned with whether or not to exclude certain admissions made by Willard during the incustody interrogation. Nevertheless, the witnesses called at the hearing testified to the facts which are basic to the civil suit and which demonstrate that the cause of action is without merit. A complete transcript was made of the hearing. Hence this Court does not feel compelled to follow the normal course of establishing a record from which the Court of Appeals can discern the facts of the case and the reasoning of the trial court. Cole v. Smith, 344 F.2d 721, 8 Cir. 1965.

The doctor testified that he saw Willard on two times, once on November 11, 1966, and a second time on November 15, 1966 (both times at around 11:00 a. m.). The doctor testified that he diagnosed Willard's condition as nervous indigestion. The jailer testified that Willard was given special food for breakfast while he was held in the jail, and the special agent of the FBI testified that at no time did Willard ask to secure medication. The trial judge observed the demeanor of all of the witnesses and at the conclusion of the testimony stated that he did not believe that Willard was sick at the time of the interrogation.

Willard himself testified that he did not have any pain in his stomach because he did not eat for four or five days before he saw the doctor. Yet in the complaint he states that he did suffer a great deal both then and later. He prays for One Million Dollars in damages and future protection and safeguards for his impaired health and the violation of his constitutional rights.

On consideration of the entire record, the totality of the facts satisfy this Court that the complaint is frivolous. The Court can see no possible justification for holding a hearing in which the same witnesses would come, at great expense to the government, to testify to the same facts which they testified to in the criminal proceeding. It is normal for a person to become nervous when he is taken into custody by the police. It is not difficult to imagine how one might have nervous indigestion. Yet, if the police are to maintain law and order, they have to take suspects into custody. The oft quoted phrase of Price v. Johnston, 334 U.S. 266, at 285, 68 S.Ct. 1049, at 1060, 92 L.Ed. 1356 (1948) is applicable to in-custody interrogation: "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction is justified by the considerations underlying our penal system." The Courts are powerless to prevent an individual from becoming nervous when the party is arrested for violating the laws.

Clearly the plaintiff would not have the right to a jury trial under the Federal Tort Claims Act. However, since the Court is convinced that the complaint is frivolous, all of the motions become moot. An appropriate order will be entered.