Johnny WALTON, Anthony McNeal, Eddie Baines, Maurice Grant, Rodney Parker, Alton Logan, Fred Reed, Clarence Hayes, James Garland, Carl Page, Linnel Harding, Lorenzo Guye, Plaintiffs,

v.

J.W. FAIRMAN, Sheriff Michael Sheahan, Supt. Caldwell, Cook County Dept. of Corrections, Defendants.

No. 92 C 3372.

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1993.

Johnny Walton, pro se.

Anthony McNeal, pro se.

Eddie Baines, pro se.

Rodney Parker, pro se.

Alton Logan, pro se.

Fred Reed, pro se.

Clarence Hayes, pro se.

James Garland, pro se.

Carl Page, pro se.

Linnel Harding, pro se.

Lorenzo Guye, pro se.

Terry L. McDonald, Michael David Jacobs, William P. Pistorius, Cook County State's Attorney's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

■ Johnny Walton, Anthony McNeal, Eddie Baines, Maurice Grant, Rodney Parker,[1] Alton Logan, Fred Reed, Clarence Hayes, James Garland, Carl Page, Linnel Harding, and Lorenzo Guye ("plaintiffs") bring this pro se action pursuant to 42 U.S.C. § 1983 against J.W. Fairman, Executive Director of the Cook County Department of Corrections ("CCDOC"); Michael Sheahan,

Sheriff of Cook County; and Benny Caldwell, Superintendent of Division I of CCDOC ("defendants"). Plaintiffs, pretrial detainees at Cook County Jail, allege that the conditions of confinement at Cook County Jail violate the Eighth Amendment's prohibition against cruel and unusual punishment.[2]

Defendants have filed a motion to dismiss to which plaintiffs have responded.

## I. Standard of Review

■ Under Rule 12(b)(6) Fed.R.Civ.P., a claim may be dismissed if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

## II. Facts

Plaintiffs allege that they have informed defendants about rats and other rodents making nests on F–1 Division one. They claim that defendants have not made any attempts to exterminate the vermin and have not responded to any of their grievances or letters. McNeal alleges a rat bit him on March 12, 1992, as he got out of bed. Garland avers that he had a rat bite on April 3, 1992, and the inmates caught the rat. Logan relates that a swarm of mice attacked him on April 29, 1992, as he lay in bed. Walton states that a rat which had climbed on his bed bit him on the base of the neck on May 4, 1992. Plaintiffs claim they found a live mouse in their food trays on May 7, 1992, which prompted them to file this complaint. Plaintiffs claim they have informed defendants about these conditions through grievances, letters, and personally informing Fairman, Caldwell, and a high-ranking sheriff's representative on May 7, 1992.

1. Parker was dismissed from this action for want of prosecution for failure to appear for the status call on August 7 and 21, 1992.

2. Only the Due Process Clause of the Fourteenth Amendment is applicable to plaintiffs as pretrial detainees. *See Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir.1992); *Anderson v. Gutschenrit-*

*ter*, 836 F.2d 346, 348–49 (7th Cir.1988). However, the standard for analyzing a pretrial detainee's Fourteenth Amendment Due Process Claim is identical to the standard employed to judge a convicted inmate's Eighth Amendment cruel and unusual punishment claim. *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1094 (7th Cir.1986).

## III. Analysis

### A. Individual Capacity

■ Defendants argue that they cannot be held liable in their individual capacities. It is well established that liability under § 1983 must be based on personal involvement in a constitutional deprivation. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). Absent direct responsibility for the conduct complained of, liability will not lie against a supervisory official. *Rascon, 803 F.2d at 273.* There also must be an affirmative link or causal connection between the misconduct complained of and the official sued. *Id.* The doctrine of respondeat superior also does not apply in a § 1983 action. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988).

■ Defendants argue that the defendants have supervisory positions in the hierarchy of the CCDOC and plaintiffs have not alleged that defendants are responsible for the day-to-day activities of individual tiers at the CCDOC, and that the complaint lacks any explanation of how and when defendants received personal knowledge about the rat problem prior to the last alleged incident. To the contrary, plaintiffs have attached copies of letters and grievances, including a letter to Sheahan and Fairman, dated 4–3–92, and a grievance to Shennan [sic], Fairman, and Caldwell, dated 3/10/92. These attachments indicate that plaintiffs have tried to bring the conditions to the attention of those in authority. The court accordingly declines to grant defendants' motion to dismiss them in their individual capacity.

### B. Official Capacity

■ Defendants argue that defendants cannot be held liable in their official capacities. It is well established that suits against governmental officials in their official capacity are actually suits against the governmental entity for which they work. *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). Governmental entities cannot be held liable unless an official policy caused the constitutional violation asserted in the complaint. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978); *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir.1989), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990).

■ The court has carefully examined all of plaintiffs' pleadings and determines that plaintiffs have not alleged any kind of policy or custom on the part of officials at CCDOC to allow rats or any other four-legged vermin to roam the jail freely. The court accordingly grants defendants' motion to dismiss them in their official capacity.

### C. Conditions of Confinement

■ Prisoners who claim that conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment must show deliberate indifference on the part of prison officials. *Wilson v. Seiter,* —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Whether the rat overpopulation rises to the level of a constitutional violation hinges on both the objective and subjective prongs of *Wilson.* The objective prong asks whether the deprivation was sufficiently serious and looks to the conditions themselves. *Id.*

Defendants' argue that in order to show a due process violation, plaintiffs must demonstrate genuine privations and hardship over an extended period of time, *Bell v. Wolfish,* 441 U.S. 520, 542, 99 S.Ct. 1861, 1875, 60 L.Ed.2d 447 (1979), and that plaintiffs have identified only a handful of isolated events. However, three of the plaintiffs claim that rats bit them, and another claims a swarm of mice attacked him. The alleged bites and attacks took place in about a month-and-a-half time span, which hardly makes up a handful of isolated events. Defendants then argue that plaintiffs have not identified deprivations of the minimal civilized measure of life's necessities, *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989). In this court's view, there is a profound difference between leaving an inmate in wet clothes in his cell for three days as in *Johnson* and allowing conditions in which inmates are bitten by rats and other rodents, well-known carriers of diseases, including rabies. Moreover, this complaint goes far beyond the allegations in

*Washington v. Sheehan,* 92 C 301 (N.D.Ill. 1992), in which this court granted defendants' motion to dismiss. Although Washington did not claim bites or other injuries from rodents, this court still found that his complaint suggested more than mere speculation and that he conceivably could state facts significant enough to meet the objective prong of *Wilson.* Washington, however, foundered on the subjective prong of *Wilson.*

Taking plaintiffs' allegations as true, which this court must on a motion to dismiss, imprisoning plaintiffs in dungeon-like conditions in which rodents crawl all over and attack them is barbarous to the standards of our contemporary society. *See Jackson v. Duckworth,* 955 F.2d 21 (7th Cir.1992). Plaintiffs have accordingly satisfied the objective prong of *Wilson.*

 The subjective prong of *Wilson* looks to intent and asks whether prison officials acted with a sufficiently culpable state of mind. ──── U.S. at ────, 111 S.Ct. at 2324. In the Seventh Circuit, the minimum showing of intent needed to state a claim of cruel and unusual punishment is deliberate indifference. *Duane v. Lane,* 959 F.2d 673, 676 (7th Cir.1992). "Deliberate indifference" entails that prison officials have "actual knowledge of impending harm rather than a mere suspicion" and must "consciously and culpably" refuse to take steps to prevent the harm. *Campbell v. Greer,* 831 F.2d 700, 702 (7th Cir.1987). Mere negligence is not deliberate indifference. *Id.* Prison officials must show total unconcern for a prisoner's welfare in the face of serious risks. *Duane* at 676.

Defendants argue that the complaint does not contain allegations of personal involvement or action on the part of any of the defendants that resulted in the alleged deprivations and that the complaint fails to allege any knowledge on the part of defendants of the alleged deprivations prior to May 7, 1992, when the last alleged incident took place thus negating any intent or deliberate indifference on the part of defendants.

As determined earlier, plaintiffs have sufficiently alleged personal knowledge by defendants. In light of plaintiffs' contention that they "told defendants of a large nest of rats and mice, on the clothing of pretrial detainees; thats [sic] left on the floor by staff; and a large nest in the storage room, that is never checked or even opened for inspection" (Plaintiffs' complaint at 4–B), and that defendants do not exterminate or make any other efforts to rid the jail of four-legged vermin, the court finds that plaintiffs have sufficiently alleged facts to demonstrate deliberate indifference by defendants.

## D. Maliciousness of the Complaint

Defendants aver that the complaint should be dismissed as malicious because plaintiffs indicated that they had only one other suit pending before the Northern District of Illinois (*Walton, et al. v. Fairman, et al.,* 92 C 2846, which Judge Zagel dismissed on March 9, 1993, for failure to serve defendants). In actuality, this core group of plaintiffs had at least two other cases pending at the time they filed this complaint, *Walton, et al. v. Fairman, et al.,* 92 C 1618, which Judge Williams dismissed on July 29, 1993, for want of prosecution, and *Walton, et al. v. Fairman, et al.,* 92 C 2128, which Judge Shadur dismissed on June 11, 1993, for want of prosecution.

 Lack of good faith or malice may be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher,* 741 F.2d 209, 212 (8th Cir.1984). The court agrees with Judge Williams, who dismissed James Garland from *Walton, et al. v. Fairman, et al.,* 92 C 1618, that Garland was on notice of the consequences of not filling out the complaint truthfully and accordingly dismisses him from this action for the same reasons as stated in *Walton, et al. v. Fairman, et al.,* 92 C 1618 (N.D.Ill. March 31, 1993).

 The remaining plaintiffs are more problematical. Some joined Walton in the other three actions; others did not. The remaining plaintiffs, except Walton (who the court does not dismiss for the same reasons as stated by Judge Williams in *Walton, et al. v. Fairman, et al.,* 92 C 1618 (N.D.Ill. March 31, 1993)), had not filed complaints in the Northern District of Illinois before this barrage. It is accordingly premature to dismiss

**516**

them for their failure to inform the court on the forms about the existence of previous actions of which they were a part. However, they are now on notice that they must answer all questions on the form complaint truthfully on any future complaints they may file in federal court, whether individually or with other plaintiffs. If they do not answer all questions truthfully, the complaint may be dismissed as malicious pursuant to 28 U.S.C. § 1915(d).

Based on the procedural history of the other three cases, however, it is likely that plaintiffs may no longer wish to pursue this claim. Rather than waste the court's resources or litigants' time, each plaintiff, individually, must advise the court whether he wishes to pursue this action. Any plaintiff the court has not heard from on or before October 27, 1993, will be dismissed from this action. If the court does not hear from any of the plaintiffs, it will assume that plaintiffs have abandoned this claim and will dismiss this action for want of prosecution.

### IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted as to the official capacity claim. It is denied as to the individual capacity claim and the conditions-of-confinement claim. Defendants are given until October 27, 1993, to answer or otherwise plead. Plaintiff James Garland is dismissed from this action. Plaintiffs are given until October 27, 1993, to advise the court if they wish to pursue this action.